IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division

DUNG PHAN,         )
                   )
    Petitioner,    )
                   )
    v.             )    Case No. 1:10cv114
                   )
ERIC HOLDER, et al., )
                   )
    Respondents.   )

## MEMORANDUM OPINION

This action seeks review of the United States Citizenship and Immigration Services' ("USCIS's") denial of petitioner's naturalization application. At issue on summary judgment is whether an adjudication pursuant to the District of Columbia's Youth Rehabilitation Act, D.C. Code § 24-901 *et seq.* ("DCYRA"), counts as a "conviction" for immigration purposes even though the prison sentence was suspended and the conviction thereafter set aside. The matter, having been fully briefed and argued, is ripe for disposition. For the reasons set forth herein, petitioner's DCYRA adjudication counts as a "conviction" for an aggravated felony, and thus he cannot establish good moral character as required of naturalization applicants by the Immigration and Nationality Act, 8 U.S.C. § 1 *et seq.* ("INA").

I.[1]

Petitioner, Dung Phan, is a citizen of Vietnam and permanent resident of the United States who resides in Falls Church, Virginia. On June 18, 2001, at age 18 and prior to being

---

[1] The facts recited herein are derived from the parties' pleadings and exhibits and are not materially disputed.

granted permanent resident status, petitioner was arrested in the District of Columbia and charged with distribution of cocaine in a "drug free zone" pursuant to D.C. Code §§ 48-904.01(a) and 48-904.07a.[2] He pled not guilty, and was convicted after a jury trial in the Superior Court of the District of Columbia. Petitioner was sentenced to two years' imprisonment followed by a five-year supervised release period, but the sentencing court suspended the prison term pursuant to a provision of the DCYRA that affords courts discretion to suspend prison terms for "youth offenders" below age 22 where the offender "does not need commitment" and would derive benefit from a probation term. D.C. Code § 24-903(a). Accordingly, petitioner was placed on an eighteen-month probation term. Thereafter, on December 16, 2003, upon successful completion of the probation term, petitioner's conviction was set aside pursuant to another provision of the DCYRA, D.C. Code § 24-906(e).

On June 9, 2008, petitioner filed an application for naturalization. Through his application and during his subsequent interview with a USCIS officer, USCIS learned of the adjudication on the cocaine distribution charge. USCIS denied petitioner's application for naturalization on March 4, 2009 on the ground that the prior adjudication was an aggravated felony conviction and thus barred petitioner from establishing "good moral character" as required by 8 U.S.C. § 1427(a)(3). Upon rehearing, USCIS affirmed the denial of the application on

---

[2] A "drug free zone" is defined by statute as areas within 1000 feet of a school, park, library, or public housing project. D.C. Code § 48-904.07a(a). Pursuant to the D.C. Code, drug offenses committed within a "drug free zone" are subject to terms of imprisonment and fines up to twice those otherwise imposed for the same offense. *Id.* § 48-904.07a(b). Of course, the D.C. Code's use of the term "drug free zone" to describe these areas is revealingly inapt, as the purpose of the laws criminalizing possession and distribution of narcotics is to ensure that *all* areas are drug-free zones, not merely those to which the "drug free zone" enhancement applies.

October 6, 2009, concluding that notwithstanding the set-aside, petitioner's "conviction remains for immigration purposes due to the original finding of guilt, and the restraint on [his] liberty as a result of the . . . subsequent order of 18 months of supervised probation." Gov't. Ex. 7 at 2–3.

Thereafter, on February 5, 2010, petitioner filed this action seeking review of USCIS's denial of his application for naturalization pursuant to 8 U.S.C. § 1421(c). Petitioner contends that USCIS erroneously concluded that he was convicted of an aggravated felony for purposes of the INA for two reasons. First, petitioner contends that a sentence under the DCYRA is a juvenile delinquency adjudication and thus does not count as a conviction under the INA. Second, he argues that the suspension and set-aside operated to nullify the conviction for INA purposes. Respondents filed a motion for summary judgment in which they argue that USCIS correctly concluded that the drug distribution conviction is an aggravated felony for immigration purposes and the suspension and set-aside do not alter this conclusion. For the reasons that follow, petitioner was convicted of an aggravated felony, a conviction that remained intact for immigration purposes notwithstanding the DC court's set-aside pursuant to the DCYRA. Accordingly, USCIS properly denied petitioner's naturalization application.

## II.

Pursuant to 8 U.S.C. § 1421(c), district courts review *de novo* a denial of naturalization and are charged by that statute with making findings of fact and conclusions of law as appropriate. Where, as here, the facts are not materially disputed, summary judgment is the appropriate vehicle for review of USCIS's decision. And in this respect, the summary judgment standard is too well-settled to require elaboration. In essence, summary judgment is appropriate

under Rule 56, Fed. R. Civ. P., only where, on the basis of undisputed material facts, the moving party is entitled to judgment as a matter of law. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).[3] Importantly, to defeat summary judgment the non-moving party may not rest upon a "mere scintilla" of evidence, but must set forth specific facts showing a genuine issue for trial. *Id.* at 324; *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986). Thus, the party with the burden of proof on an issue cannot prevail on summary judgment on that issue unless he or she adduces evidence that would be sufficient, if believed, to carry the burden of proof on that issue at trial. *See Celotex*, 477 U.S. at 322.

### III.

To qualify for naturalization, an applicant must show that he is a "person of good moral character." 8 U.S.C. § 1427. The INA further specifies that "[n]o person shall be regarded as, or found to be, a person of good moral character who . . . at any time has been convicted of an aggravated felony." *Id.* § 1101(f)(8). The statute's definition of aggravated felony includes "illicit trafficking of a controlled substance," *id.* § 1101(a)(43), and thus includes the drug distribution charge of which petitioner was found guilty by a jury. The sole remaining issue, therefore, is whether petitioner was in fact "convicted" of that crime. In this respect, petitioner argues (i) that the proceeding was a juvenile delinquency adjudication and thus does not count as a conviction under the INA, and (ii) that the trial court's set-aside of his conviction essentially

---

[3] It is worth noting, notwithstanding plaintiff's assertion that summary judgment is a "drastic and disfavored remedy," Pl. Opp. at 3, that the Supreme Court has held to the contrary, noting that "[s]ummary judgment procedure is properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the Federal Rules as a whole." *Celotex*, 477 U.S. at 327.

nullified the conviction for immigration purposes. These two arguments shall be separately addressed.

A.

Petitioner first contends that USCIS incorrectly denied his naturalization application because his adjudication and sentencing on the drug distribution charge was a juvenile delinquency proceeding and not a "conviction" as the term is used in the INA, which defines a conviction as a "formal judgment of guilt." 8 U.S.C. § 1101(a)(48)(a). The Board of Immigration Appeals and other circuits have concluded that whether an adjudication is a juvenile delinquency proceeding and not a conviction for immigration purposes turns on whether the adjudication "corresponds to a determination of juvenile delinquency" under the Federal Juvenile Delinquency Act, 18 U.S.C. § 5031 *et seq.* ("FJDA"). *In re Devison-Charles*, 22 I&N Dec. 1362, 1368 (BIA 2000); *see Badewa v. Att'y Gen.*, 252 F. App'x 473 (3d Cir. 2007); *Uritsky v. Gonzales*, 399 F.3d 728 (6th Cir. 2005). The analysis here therefore requires the determination whether the DCYRA corresponds to a determination of juvenile delinquency under federal law.

In *Devison-Charles*, the Board of Immigration Appeals concluded that New York's youthful offender statute, N.Y. Crim. Proc. Law § 720.20, corresponds substantially to the FJDA and thus an adjudication under that statute was not a conviction for immigration purposes. 22 I&N Dec. at 1366. Unlike the FJDA, but like the DCYRA, the New York statute requires the defendant to tried as an adult, and only upon a conviction is the defendant diverted from the adult penal system. N.Y. Crim. Proc. Law § 720.20(1). But this difference was not dispositive for, as the BIA noted, the New York law requires that the trial court at sentencing "*must* determine

whether or not the eligible youth is a youthful offender," and if he or she is, then the court "*must* direct that the conviction be deemed vacated and replaced by a youthful offender finding," and the youthful offender is sentenced pursuant only to the youthful offender statute. *Id.* § 720.20(3) (emphases added). Thus, the New York statute requires courts immediately to vacate sentences upon a finding that the defendant is a youthful offender. No other preconditions—such as good behavior during a probation period—are required prior to vacatur, and trial courts applying the New York statute have no discretion to impose the full "adult" sentence notwithstanding the determination that the defendant is a youthful offender.

The BIA's determination in *Devison-Charles* that adjudication under the New York statute is not a conviction hinged on the immediate and mandatory nature of vacatur of conviction upon a finding of youthful offender status. Specifically, the Board distinguished an adjudication under the New York youthful offender law from an adjudication under a procedure in which a conviction is expunged after a defendant successfully completes a diversionary program—which, it held, *is* a conviction for immigration purposes—as follows:

> In the case of an expungement or deferred adjudication, the judgment in the criminal proceeding either starts out as a "conviction" that can be "expunged" upon satisfactory completion of terms of punishment and petition to the court, or as a judgment that is deferred pending similar satisfaction of conditions of punishment. In either case, however, neither expungement nor deferral can be presumed, and the original judgment of guilt may remain, or ripen into, a "conviction" under state law. This is a dispositive difference, because a juvenile adjudication cannot become a conviction based on the occurrence or nonoccurrence of subsequent events.

*Devison-Charles*, 22 I&N Dec. at 1371. Thus, the critical distinction is whether vacatur of the conviction depends "on the occurrence or nonoccurrence of subsequent events" following the determination of youth offender status. If it is not—as with the FJDA and the New York youth

-6-

offender—then there is no conviction for immigration purposes. On the other hand, if vacatur is discretionary or contingent on participation in a diversionary program, then the adjudication is a conviction under the INA. Applying this principle, the Sixth Circuit has held that a Michigan "youthful trainee" program adjudication is a conviction under the INA. *See Uritsky*, 399 F.3d at 735. And importantly, the Third Circuit has held that an adjudication under the DCYRA is also a conviction. *Badewa*, 235 F. App'x at 476–77.

At this point, a brief overview of the DCYRA's procedures aids the analysis. Pursuant to the statute, offenders under age 22, characterized as "youth offenders," are to be tried and sentenced in the D.C. Superior Court like any other adult offender. D.C. Code § 24-901. After conviction and sentence for a crime other than murder, the sentencing court, if it determines "that the youth offender does not need commitment," *may* suspend the youth offender's prison sentence and order probation instead. *Id.* § 24-903(a)(1). But, also in its discretion, it may require the youth offender to serve the full sentence otherwise required by law. Thus, the "youth offender" status determination is not dispositive of whether the youth offender shall be required to serve the full prison sentence required of any adult offender. Thereafter, upon partial or full completion of the probation term, the court may, in its discretion, choose to set aside the conviction. *Id.* § 24-906(e). But again, the court may also choose not to set aside the conviction and require the offender to serve the full sentence including incarceration, even if the youth offender has complied with all terms of probation. Thus, youth offender designation renders the offender *eligible* for the DCYRA's diversionary program, but it does not *automatically* confer upon the youth offender the right either (i) to avoid incarceration for the offense, or (ii) to have

the conviction set aside. Whether to do either, or both, rests in the discretion of the sentencing court. And, in any event, the conviction may not be set aside until after imposition of the "adult" sentence and partial completion of the DCYRA probation sentence. *See id.* § 24-901(a)(4).

In this respect, and as the Third Circuit held in *Badewa*, the DCYRA is plainly distinguishable from the FJDA and the New York youth offender statute. Specifically, the conviction is not automatically vacated upon a finding of youthful offender status. To the contrary, such a determination merely grants the trial court *discretion* to *suspend* the execution of the sentence and order probation instead. And only once the youthful offender has begun serving his probation sentence may the trial court decide, in its discretion, to set aside the conviction altogether. Thus, an adjudication under the DCYRA is not a judgment that "cannot become a conviction based on the occurrence or nonoccurrence of subsequent events." *Devison-Charles*, 22 I&N Dec. at 1371. To the contrary, it is a "judgment in the criminal proceeding [that] either starts out as a 'conviction' that can be 'expunged' upon satisfactory completion of terms of punishment and petition to the court, or as a judgment that is deferred pending similar satisfaction of conditions of punishment." *Id.* Accordingly, an adjudication under the DCYRA is a conviction, and not a juvenile delinquency determination, for purposes of the INA.

B.

Additionally, petitioner also argues that even if he was initially convicted, the subsequent set-aside of his conviction essentially nullified that conviction for immigration purposes. This contention is unavailing, for the Fourth Circuit has held that a conviction remains intact for INA purposes "if the original conviction is vacated for reasons not related to the merits of the

underlying criminal proceedings." *Parikh v. Gonzales*, 155 F. App'x. 635, 638 (4th Cir. 2005) (citing cases in support of "well settled" rule). On the other hand, the conviction no longer exists if vacatur is ordered "because of a defect in the underlying criminal proceedings." *Id.* In this matter, there is no dispute that the set-aside of petitioner's two-year prison sentence was pursuant to the DCYRA, and not due to any defect in the underlying criminal proceeding, during which petitioner was convicted by a jury on the drug distribution charge. Thus, notwithstanding the set-aside under the DCYRA, petitioner's conviction remains intact for INA purposes.

## IV.

In sum, petitioner's conviction on the drug distribution charge, and the subsequent disposition of that conviction pursuant to the DCYRA, was a conviction of an aggravated felony for immigration purposes. Thus, USCIS correctly ruled that the conviction poses a statutory bar to petitioner's naturalization petition, and summary judgment therefore must be granted and USCIS's decision affirmed.

An appropriate Order shall issue.

Alexandria, Virginia
June 29, 2010

/s/
T. S. Ellis, III
United States District Judge